UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DIMITRIOS MICHAEL BELAVILAS, ANGELO BELAVILAS, MARIA BELAVILAS, NICKOLAS BELAVILAS, D MAN, INC., E/B/A/ AMERICAN PAWN, GYROS EXPRESS, KING GYROS, and VLAKO, INC., | Appeal from the United States Bankruptcy Court, Northern District of Indiana, Fort Wayne Division |
| Appellants-Defendants Below, | |
| v. | CASE NO. 1:03-CV-480 |
| R. DAVID BOYER, CHAPTER 7 TRUSTEE, | Adversary Proceeding |
| Appellee-Plaintiff Below. | No. 02-1084 below |

**OPINION AND ORDER**

This matter is before the Court on appeal from the United States Bankruptcy Court. For the reasons set forth below, the decision of the bankruptcy court is AFFIRMED.

**BACKGROUND**

Prior to his petition for relief under Chapter 7 of the United States Bankruptcy Code, Appellant Dimitrios Michael Belavilas ("the Debtor") and his wife, Maria Belavilas, were the sole shareholders of D Man, Inc., a corporation formed on May 12, 1997, to own and operate a pawn shop. After only three months of operation, the pawn shop burned down and D Man received $370,246.42 in insurance proceeds in three separate checks: one for $103,542.02, dated July 8, 1999; one for $66,704.40, dated September 17, 1999, and one for $200,000, dated January 22, 2000.

Having received these checks, the Debtor and Maria Belavilas deposited them into two

accounts held by their minor children.[1] The children had no knowledge of, and gave no consideration for, these transfers. From there, the Debtor and his wife withdrew most of the funds and deposited them into two other accounts. About $17,600 went into an account in the name of Gyros Express, upon which the Debtor was a signatory, and $320,000 into an account held by Vlako, Inc., a corporation formed by the Debtor's wife only two days before the Debtor filed his Petition for Relief under Chapter 7 on May 24, 2000.

When the Debtor filed his Petition, he claimed that he had a 2% interest in D Man and that he had received less than $2,000 of the insurance proceeds. He claimed that the remainder of the insurance proceeds were paid to his wife and children on account of their interests in the corporation.

In denying the Debtor's discharge, the bankruptcy court found that the Debtor failed to disclose his true ownership in D Man: in truth he had a 50% interest in the corporation, not the 2% he had claimed. The court further found that the Debtor transferred funds into a Merrill Lynch account, which he owned jointly with his wife, and to an account owned solely by his wife. The court found that the Debtor acted with the intent to keep the funds outside the estate and to defraud creditors. In addition, the court found that the Debtor owned two other bank accounts: the Gyros Express and the King Gyros accounts.

After the trial, the bankruptcy court held, *inter alia*, that one half of the insurance proceeds, $185,123.21, should be regarded as the Debtor's assets. The court determined that the Trustee was entitled to avoid the Debtor's transfers to his children and then to the Gyros Express and Vlako

---

[1] On July 26, 1999, the Debtor's children, Angelo and Nickolas Belavidas, received equal shares of D Man's first check, or $51,771.01 each. On September 27, 1999, they received $33,704.40 and $33,000.00 respectively from D Man's second check. On January 25, 2000, they received equal shares of D Man's third check, or $100,000.00 each.

accounts and recover these funds, because these transfers were made with the intent to defraud the Debtor's creditors.

These broad strokes were certain, but the bankruptcy court was unclear as to the specifics of the judgment the Trustee sought regarding the Debtor's share of the insurance proceeds. The court therefore deferred entering judgment until it could clarify the matter. The court scheduled a hering to determine whether the Trustee sought simple declaratory relief or some kind of money judgment. If a money judgment, the court wanted the Trustee to provide a clear proposal of how it should be structured.

The bankruptcy court held this hearing on October 20, 2003. Throughout, the court and the Parties discussed Maria Belavilas' and her children's liability, as illustrated by these excerpts from the transcript:

- "The Trustee wants a judgment for one-half of one hundred eighty-five thousand one hundred twenty-three dollars jointly and severally against Angelo Belavilas and his mother and a second judgment against—in the same amount against Nickolas Belavilas and his mother. All as [] mediate transferees of that fraudulent transfer."

- "Now, how do we coordinate that with judgment against Momma and the kids?"

- "The Court has already determined that [the two children] are the initial transferees."

- "Trustee is entitled to recover the transfer of the insurance proceeds from Debtor's children and their subsequent transferees, Gyros and Vlako."

- "[A]t least as we sit here today the Court regards children and Momma as custodian for them as the initial transferees from whom recovery may be made . . ."

- "Having heard no objections to the joint and several judgment against the kids and Momma . . ."

The bankruptcy court issued its final judgment on November 20, 2003. With regard to the Debtor's half of the insurance proceeds, the bankruptcy court found these Parties jointly and

3

severally liable: Maria Belavilas, for $185, 123; Angelo and Nickolas Belavilas, for $92,561 each; and Vlacko, for $183,130.

The Appellants filed their Notice of Appeal on December 1, 2003. Their appeal only concerns the bankruptcy court's judgment regarding the insurance proceeds. The Appellants concede that the Trustee can avoid the transfer of one-half of the insurance proceeds out of D-Man under 11 U.S.C. § 548. However, the Appellants argue that the Parties from whom payment is being sought—namely, Angelo, Nickolas, and Maria Belavilas—are not responsible for payment under 11 U.S.C. § 550(a). First, the Appellants contend that the bankruptcy court's findings of fact do not support its judgment against Angel and Nickolas. Second, the Appellants argue that the bankruptcy court's findings of fact do not support its judgment against Maria Belavilas.

**STANDARD OF REVIEW**

In reviewing a bankruptcy court's decision, this Court acts as an appeals court and applies the same standards of review as govern appellate review in other cases. *In re Smith*, 286 F.3d 461, 465–66 (7th Cir. 2002); *see also Zygulski v. Daugherty*, 236 B.R. 646 (N.D. Ind.1999); *Sagamore Park Centre Assocs., L.P. v. Sagamore Park Props.*, 200 B.R. 332 (N.D. Ind.1996). The sole issue before this Court is one of law. Accordingly, this Court reviews the bankruptcy court's legal determination de novo. *Zygulski*, 236 B.R. at 651. De novo review requires the district court to make an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *Id.*; *see also Smoker v. Hill & Assocs., Inc.*, 204 B.R. 966 (N.D. Ind.1997).

4

**DISCUSSION**

A. **Angelo and Nikolas Belavilas**

The Appellants argue that the bankruptcy court's conclusion that Angelo and Nickolas were "transferees" from whom the Trustee is entitled to recover is contrary to the factual determinations made by that court. The Appellants cite the bankruptcy court's findings that Angelo and Nickolas were not aware either of the accounts their parents had opened in their names or that the insurance proceeds had been transferred into these accounts.

The Appellants contend that this finding is dispositive of the Trustee's ability to obtain a judgment against them, resting their argument chiefly on the Seventh Circuit's opinion in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988). In *Bonded*, the court considered whether a trustee could recover a bankrupt company's transfer to a bank. The court held that the bank was not an "initial transferee" under § 550 because it lacked a minimum requirement for a transferee: "dominion over the money, the right to put the money to one's own purposes." *Id.* at 893. The court stated that a "transferee" must be more than merely a "'possessor', 'holder', or 'agent'" of funds. *Id.* at 894.

The Appellants also cite a Sixth Circuit case, *In re Baker & Getty*, 974 F.2d 712 (6th Cir. 1992). In this case, the court held that a corporate officer was not a transferee when funds were temporarily placed in his account before being paid over to a bank. "It is true that as a matter of commercial law, Rice could have applied the endorsed cashier's check to any purpose he chose. However, in law the money was not his and he was simply acting at the direction of [the corporation's president.]" *Id.* at 722.

The Appellants would have this Court find that Angelo and Nickolas are similar to the bank in *Bonded* and the corporate officer in *In re Baker & Getty*. However, these parallels are unconvincing. The Seventh Circuit held in *Bonded* that the bank was not a "transferee" as the term is used in § 550 because it had no legal right to use the money it received from the debtor for its own purposes. Likewise, the Sixth Circuit held in *In re Baker & Getty* that the corporate officer was not a transferee because, although he had the opportunity to use the funds as he wished, he did not have the legal right to do so.

This case presents an opposite situation. Here, after transferred into their accounts, the insurance proceeds legally belonged to the children. However, because they were minors, they were dependant on their guardians to make decisions concerning the accounts. Whereas in the cases cited by the Appellants, the parties had the opportunity but not the legal right to use the funds as they wished, here the children had the legal right to use the money but no opportunity.

It was the Debtor and Maria Belavidas, not the children, who were legally restricted in how they used the funds at issue. Under Indiana law, the funds transferred to the Debtor's children were "custodial property" under Indiana Code § 30-2-8.5-4. The Debtor and his spouse, as their children's custodians, were required to exercise these "rights, powers, and authority in a custodial capacity only." Ind. Code § 30-2-8.5-28.

However, whether the Debtor and his wife indeed acted in their children's interests is of no consequence where the question before the Court is merely whether Angelo and Nickolas were the initial transferees of the Debtor's share of the insurance proceeds; it is clear that they were.

For these reasons, this Court finds that the Appellants have failed to demonstrate that the bankruptcy court's conclusion—that Angelo and Nickolas were initial transferees of the insurance

6

proceeds—was without factual basis. Accordingly, the Court upholds the bankruptcy court's judgment against Angelo and Nickolas with regard to the insurance proceeds.

**B.     Maria Belavilas**

The Appellants also argue that the Bankruptcy court erred when it held Maria Belavilas jointly and severally liable "for transfers held fraudulent by this Court in its Decision of October 7, 2003," in the amount of $185,123. This figure represents the Debtor's share of the insurance proceeds, which the Court held was fraudulently transferred to the Debtor's children, and then mediately transferred to Maria Belavilas and to Vlako.

The Appellants make two arguments why the bankruptcy court's judgment against Maria should be reversed. First, the Appellants argue that the bankruptcy court's findings of fact do not support the conclusion that Maria was a transferee from whom the Trustee is entitled to recover, and therefore the bankruptcy court should not have entered judgment against her. Second, the Appellants argue that the bankruptcy court was precluded from entering judgment against Maria for return of the insurance proceeds or their value because the Trustee failed to request such relief in the Amended Complaint or in the Joint Pretrial Order

**(1)     *Whether the Bankruptcy Court Found that Maria Belavilas was a Transferee***

The Appellants argue that the bankruptcy court's conclusion that Maria Belavilas was a transferee from whom the Trustee is entitled to recover is contrary to the facts presented and as found by the Bankruptcy court. The Appellants state that the Trustee must prove that Maria is either (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

7

(2) any immediate or mediate transferee of such initial transferee. They contend that a close reading of the bankruptcy court's October 7, 2003, Decision ("Decision") reveals no basis upon which to conclude that Maria was a transferee under this test. The Appellants argue that "[b]ecause the [D]ebtor retained control over the insurance proceeds in the Accounts, there was no 'transferee'—i.e. there was no other person or entity with dominion and control over the Insurance Proceeds."

The Appellees argue that, on the contrary, the Decision states that the Debtor's spouse had all the attributes of a transferee: dominion, control, and personal benefit from the subsequent disposition of funds.

The Appellants' claim that only the Debtor had dominion and control over the insurance proceeds does not withstand scrutiny. In several places, the Decision mentions the Debtor's wife in conjunction with the insurance proceeds. According to the Decision, the insurance proceeds were transferred . . .

> for no consideration and without a legitimate business purpose to accounts of debtor's children then to Gyros Express and Vlacko Inc. No business record exists with respect to any of these transfers. Clearly these events indicate that *debtor and his wife treated the insurance proceeds more as their own personal assets* rather than corporate ones. They used the various accounts as nothing more than convenient places to hold the funds pending their disposition and that disposition failed to serve D Man in any way.

(Decision at 5 (emphasis added).) Vlako was, of course, the corporation Maria Belavilas formed two days before the Debtor filed his Petition. *Id.* The bankruptcy court found that Maria Belavilas, along with her husband, "continued to exercise control over the proceeds despite the fact that they transferred them to their children." *Id.* at 10.

The Decision also described how Maria and the Debtor withdrew the insurance proceeds

8

from their children's accounts and transferred them into accounts they controlled.

> From there, debtor and his wife used the funds to purchase several pieces of real estate. Vlako ultimately acquired title to all the properties but, when one of them was sold, debtor's wife signed the warranty deed as debtor's power of attorney rather than as an officer of Vlako. Clearly these factors indicate that *debtor and his wife exercised complete ownership and control over D Man's insurance proceeds*, notwithstanding their transfer. *They simply used the transactions and the accounts of their children and their businesses as so many shells under which the insurance proceeds could be hidden to keep them away from the debtor's creditors*.

*Id.* (emphasis added).

The Appellants argue vigorously that, throughout the Decision, the bankruptcy court found that the Debtor retained control of the insurance proceeds. This is a peculiar argument for them to make, since they argued just as vigorously before the bankruptcy court that Maria was the only one in control of her children's accounts: "(i) Debtor's wife created the Children's Accounts, and (ii) she was the only person with control over them. . . . In particular, the Trustee mistakenly attributes the actions of Debtor's wife to him." (Response to Plaintiff's Post-Trial Brief at 6.)

There are yet more holes in the Appellants' arguments. Their Appellate Brief provides several selections from the Decision, ostensibly to support their contention that the Debtor retained control over the insurance proceeds. However, these selections also heavily implicate Maria Belavilas in the deception. But the Court finds most convincing one comment from the Decision the Appellants omitted: "the debtor's wife is not exactly an innocent spouse who played no role in the affairs before the court. She was a full participant in the control and manipulation of the insurance proceeds." (Decision at 7.)

In brief, there is much in the Decision that supports the disposition the Appellants would now have this Court overturn. The Court finds that the bankruptcy court's findings of fact are more than sufficient to support its conclusion that Maria Belavilas was a transferee.

**(2)**   *Whether the Appellants were Given Fair Opportunity to Defend against Joint and Several Liability for Maria Belavidas Regarding the Insurance Proceeds*

The Appellants also argue that Maria did not have a fair opportunity to defend herself against the Trustee's seeking contribution from her regarding the insurance proceeds. The prejudice against her, they claim, "cannot be overstated." The Appellee denies that the Appellants were unfairly surprised by this issue, and argues that the bankruptcy court did not err by finding Maria Belavidas liable for contribution.

The Parties agree that this issue is governed by Rules 15(b) and 54(c) of the Federal Rules of Civil Procedure, which state:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

Fed. R. Civ. P. 15(b).

> [E]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

Fed. R. Civ. P. 54(c).

The Parties also agree on the controlling standard to be applied to this issue: "To determine whether there was express or implied consent, we must ascertain whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir. 1992) (citations omitted).

The Appellants state that "[a]t best, Maria first became aware of the Trustee's desire to seek

10

judgment against her for the insurance proceeds in [the] Trustee's post-trial brief. By that time, however, it was too late for Maria to present any additional evidence."[2] "Only at the October 20 hearing to determine the judgment did it become clear that [the] Trustee sought to recover the Insurance Proceeds from Maria."[3] "Had Maria been aware that the Trustee ultimately would seek to recover the insurance proceeds from her, she could have taken other action, and could have submitted additional evidence, to protect herself."

    The Appellee disagrees with the Appellants' protest of unfair surprise. For one, the Appellee notes that his Complaint asked the court to impose transferee liability on the children *and subsequent transferees*. Furthermore, Maria Belavilas was aware of the litigation all along, as she was named as a defendant in Count III of the Complaint. The Appellee contends that the Appellants were well aware that he sought to recover the Debtor's assets under §§ 548 and 550 and that both the Trustee and the bankruptcy court had unambiguously connected Maria Belavilas with the insurance proceeds after they were placed into the children's accounts.

    Furthermore, the Appellee argues that the Appellant's protest—that they were robbed of an opportunity to present evidence to defend Maria Belavilas from this liability—ignores the fact that the Appellants largely abstained from participating in the litigation before the bankruptcy court. The Appellants declined to answer discovery requests based on their Fifth Amendment privilege to be free from self-incrimination. Additionally, they declined to offer any evidence whatsoever at trial: no witnesses, no exhibits, not even a written theory of the case.

---

[2] It is not clear to the Court what the Appellants mean by claiming that they "at best" learned about this claim in the post-trial briefs.

[3] Again, it is not clear what the Appellants contend. Either they first learned about this claim from the Trustee's post-trial brief or in the October 20, 2003, hearing. However, this ambiguity is irrelevant to this Court's conclusions.

The Appellants state that they did not know the Appellee was trying to recover from Maria Belavilas until either the Appellee filed his Post-Trial Brief or the August 20, 2003, hearing. But, the Appellee notes, although the Appellants made a number of legal arguments in their Post-Trial Brief, they did not object to the Trustee's request for judgment against Maria Belavilas. The Appellee suggests that, given the Appellants' behavior before the trial, at the trial, and in post-trial briefing, the Court should discount the Appellants' suggestion that they were robbed of the opportunity they needed to rebut the Appellee's argument that Maria Belavilas should be held jointly liable for the insurance proceeds as a subsequent transferee.

The Court notes that the Appellants had waived numerous opportunities to raise the portent of surprise before their case arrived here, on appeal. They expressed no surprise after the trial (October 7, 2003), in any post-trial motion, in the post-trial hearing before the bankruptcy court (October 20, 2003), or after the hearing, before the bankruptcy court released its judgment (November 20, 2003). The Court finds the Appellants' silence in the post-trial hearing the most telling. Having carefully read the transcript of the October 20, 2003, hearing before Judge Grant, the Court notes that the Appellants' attorney never objected to the Appellee's arguments or to the Court's judgment, although the Court gave him repeated opportunities to do so.

In short, the Appellants' claim of unfair surprise rings hollow. Anyone following this case could see that the Trustee would seek contribution from Maria Belavilas, as she was deeply involved with moving the insurance proceeds from one "shell" to another. The Court finds that the Appellants had adequate notice that the Appellee would seek contribution from Maria Belavidas and that the record supports the bankruptcy court's judgment against her.

## CONCLUSION

For the reasons set forth above, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED on May 26, 2005.

                                         S/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT